**In the Matter of the Complaint of BANK-ERS TRUST COMPANY as Owner/Trustee and PPG Industries, Inc., as Chartered Owner, and Keystone Shipping Co., as Chartered Owner and Operator of the S.S. PUERTO RICAN, for Exoneration from and Limitation of Liability.**

Civ. A. No. 84–5480.

United States District Court,
E.D. Pennsylvania.

July 31, 1985.

---

Raymond T. Letulle, Krusen, Evans & Byrne, Philadelphia, Pa., for petitioners Keystone Shipping Co., PPG Industries, Inc. and Bankers Trust Co.

Cory A. Birnberg, San Francisco, Cal., for claimant Capt. J. Nolan.

John P.S. O'Connor, Pittsburgh, Pa., PPG Industries.

## MEMORANDUM OF DECISION

MCGLYNN, District Judge.

On October 23, 1984, an explosion occurred on board the S.S. Puerto Rican while the vessel was at a pilot station approximately ten (10) miles west of the Golden Gate Bridge. The ship caught fire as a result of the explosion and, although the fire was extinguished, the structurally weakened vessel eventually broke in two in heavy seas. The stern section of the ship sank while the bow section remained afloat with one tank drifting free of this portion of the vessel.

At least one life was lost and many were injured in the explosion and fire. Cargo was destroyed and a resulting oil slick caused injury to wildlife and damaged shorelines, all of which resulted in claims being made. Claims for salvage services rendered the Puerto Rican have also been asserted. In short, a plethora of damage claims have arisen as a result of these tragic events.

The petition now before the court seeks exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 181–186, 188. By order dated November 7, 1984, a Monition issued from this court requiring all parties claiming damages to file a claim for such damages in this proceeding on or before June 28, 1985. As of that date, forty-five (45) claims have been filed in this court in accordance with this order.

Pursuant to Federal Rules of Civil Procedure Supplemental Rule F(9), thirteen (13) claimants have moved or joined in motions to have this action transferred to the Northern District of California. Petitioners oppose the motion to transfer. In addition, counsel for fourteen (14) claimants has filed an answer in opposition to the motion to transfer.[1] The remaining claimants have neither joined nor opposed the motion.

Supplemental Rule F(9) provides, in pertinent part;

.... For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; ...

This rule, which replaces Admiralty Rule 54, conforms more closely to the wording of 28 U.S.C. § 1404(a) which provides for transfer of civil actions. However, Supplemental Rule F(9) retains the phrase that explicitly allows transfer to any district unlike 28 U.S.C. § 1404(a) which limits transfer to a district where the action might have been brought. 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3817 (1976).

■ Under Supplemental Rule F(9), as under 28 U.S.C. § 1404(a), transfer is at the discretion of the District Court. *Humble Oil & Refining Company v. Bell Marine Service, Inc.,* 321 F.2d 53 (5th Cir.1963); *In Re Alamo Chemical Transportation Co.,* 323 F.Supp. 789 (S.D.Tex.1970).

*In Re Alamo Chemical Transportation Co.,* 323 F.Supp. 789 (S.D.Tex.1970), provides a cogent application of this rule. Although the court denied a transfer, it did so after carefully balancing the convenience factors with respect to each of the parties and witnesses. The decision to deny transfer was reached when it became evident to the court that the factors weighed evenly for each district under consideration. In light of these circumstances, the court held that the moving party "had not met the burden which is his upon motion for transfer." *In Re Alamo Chemical Transportation Co.,* 323 F.Supp. 789, (S.D.Tex.1970).

■ However, in applying a similar analysis to the case at hand, we find that the balance weighs heavily in favor of transfer even before the "interests of justice" are considered, a factor on which the court was silent in *In Re Alamo Chemical Transportation Co.,* 323 F.Supp. 789 (S.D. Tex.1970).

■ The deadline has now passed for filing claims in this proceeding. At this point in time, according to the various documents submitted in support of and in opposition to this motion, at least six (6) of the individual claimants in this case reside in California. Three (3) have Pennsylvania addresses. The remaining individual claimants are scattered throughout the southern states. Most of those claimants who reside in states other than California or Pennsylvania are represented by counsel who maintain offices in both Philadelphia and San Francisco. Counsel for fourteen (14) of the claimants filed an answer opposing the motion for transfer which states merely that none of these claimants requested transfer. Counsel does not maintain that a California forum would be less convenient for these claimants than a Pennsylvania forum.[2]

---

1. These fourteen (14) claimants are all represented by the same attorney, whose principal office is in this district but who also maintains an office in San Francisco and San Pedro, California.

2. "The convenience of counsel is not a factor to be considered," when ruling on a motion for transfer. *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (3rd Cir.1973) (citing *Chicago, Rock Island and Pacific R.R. Co. v. Igoe,* 220 F.2d 299 (7th Cir.), *cert. denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955).

The corporate entities involved in this proceeding are almost evenly balanced on each side of the dispute. It does not appear that any of these petitioners or claimants would be prejudiced by litigating in either forum. *See, Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27, 31 (8th Cir.1973).

Convenience of the parties in this case appears to weigh more heavily on the side of the moving parties. The petitioners are East Coast corporations with corporate headquarters in Pennsylvania and New York. One petitioner, Keystone Corporation, does maintain a west coast office.[3] Of the claimants represented by counsel opposing transfer, all but three (3) are from states other than Pennsylvania. On the other hand, all claimants who have moved for transfer are located on the west coast, as are a majority of the non-moving parties.

A California forum would clearly be more convenient for a majority of the witnesses. With the exception of employees from petitioners' corporate offices and members of the vessel's crew who reside in states other than California, all witnesses to this occurrence reside in or near the State of California. In addition, as both petitioners and moving claimants have pointed out, it is the quality and not the quantity of the witnesses that is determinative upon a motion for transfer. *Bartolacci v. Corp. of Presiding Bishop, Etc.,* 476 F.Supp. 381, 383 (E.D.Pa.1979). All eye witnesses to the explosion, fire, firefighting efforts and salvage efforts, with the exception of crew members, reside on the west coast. Petitioner Keystone's west coast manager, whose testimony is pertinent to the question of liability, is located in California. *See, e.g., Petition of Clipper Fishing Corporation,* 168 F.Supp. 130

(S.D.N.Y.1958); *Sioux City & New Orleans Barge Lines v. Upper Mississippi Towing Corp.,* 221 F.Supp. 737 (S.D.Tex. 1963); *Petition of National Bulk Carriers,* 143 F.Supp. 46 (S.D.N.Y.1956).

On balance I am convinced that this proceeding should be transferred to the Northern District of California. The Supreme Court has outlined the basic purpose of § 1404(a) as an attempt to prevent "unnecessary inconvenience and expense to parties, witnesses, and the public." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 21, 80 S.Ct. 1470, 1472, 4 L.Ed.2d 1540 (1960). The standards for application of Supplemental Rule F(9) have been held to be, "those developed for application of forum non conveniens as expanded by § 1404(a)." *In Re Alamo Chemical Transportation Co.,* 323 F.Supp. 789 (S.D. Tex.1970) (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955)).

Numerous criteria have been set out as bearing upon the "interest of justice." The "center of gravity" theory was outlined in *Complaint of Far Eastern Shipping Co.,* 460 F.Supp. 107 (S.D.N.Y.1978) where transfer was granted in a limitation proceeding to the forum nearest to the site of the occurrence which took place at sea.[4]

Additional factors are:
... relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055

---

**3.** This office had direct supervision and control over the operations of the S.S. Puerto Rican prior to this incident. The manager of this office supervised the loading and other details that may prove pertinent in this limitation proceeding.

**4.** This case also outlines the issues to be determined in a limitation proceeding, i.e.: (a) cause

of loss; (b) was negligence the cause; (c) privity of knowledge of owner; (d) merits of the individual claims; (e) is any claim exempt from owner's right to limit its liability; (f) value of vessel and pending cargo. These issues, with the *possible* exception of (c), would all be more easily determined in California.

(1947). The Supreme Court also noted that "public interest" aspects were pertinent, in that, when the outcome of a proceeding affects "the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Of course, this factor weighs heavily in favor of a California forum.

█ Petitioners contend that, in this limitation proceeding, attention will focus on Keystone Corporation's management records prior to the explosion. All of these records, according to petitioners, are located on the east coast. In addition, the vessel was built and last overhauled in Maryland and Pennsylvania, respectively. Keystone's employees, however, are subject to the corporation's control and their testimony can easily be produced in either forum, as can company records. Further, Bethlehem Steel, where the vessel was constructed, and Penn Shipyard where it was last overhauled, are not parties to the action. However, if they were to become parties, they would be better able to, and less inconvenienced by, litigating the matter in a distant forum than many of the smaller and individual claimants located in or close to California. *See, Gardner Engineering v. Page Engineering Co.*, 484 F.2d 27 (8th Cir.1973). Petitioner, Keystone's records should also contain the required information regarding the vessel's final overhaul, or this information may be acquired through depositions and made available on the west coast. In any case, it appears that a key witness in these proceedings will be Keystone's west coast manager who is located in California.

The second factor listed in *Gulf Oil Corporation* may become relevant in this case. All non-party witnesses to the explosion and resulting fire are located in California. The testimony of these witnesses may prove invaluable in determining the nature of the fire and, thus the cause of the explosion. Further, the cost of having these witnesses attend would be far less in a California forum.

The schedule for the Puerto Rican shows that for four months prior to the incident in question, the vessel was operating in the area of the west coast. Any information regarding leakage or other factors that would have a bearing on liability would, of necessity, come from the testimony of witnesses who are located in that area.

The Coast Guard investigation of the incident was conducted in California. Process would be available in the Northern District of California to summon members of the Coast Guard, if such appearance should become a necessity. Further, a salvage action has been initiated in California by Ocean Beach Outfall Constructors against Chevron Corporation, et al. These ongoing proceedings in California which will involve many of the same parties, witnesses and issues, strongly supports a transfer in the interest of expediting this case in the easiest and least expensive manner.

The public interest in this case is a consideration that weighs heavily in favor of transfer. The explosion, fire, breakup and eventual sinking of the S.S. Puerto Rican apparently caused extensive damage to the environment in the area of the incident. Claims have been filed in this proceeding by the people of the State of California and by the United States of America for damage to the shoreline and marine wildlife. The claims seek penalties and the cost of clean-up efforts by government agencies both state and federal. Thus, the people of the State of California have a strong interest in the outcome of this proceeding.

I am persuaded that the convenience of the parties and witnesses and the interest of justice requires that this limitation of liability proceeding will be transferred to the Northern District of California. It is true that "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) but the adoption of supplemental Rule F(9) clearly demonstrates that there are cases in which

the plaintiffs' choice must yield and this is one of those cases.

For these reasons the motion will be granted. This action will be transferred to the Northern District of California.